J-A19034-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY HAMILTON | : | |
| | : | |
| Appellant | : | No. 3159 EDA 2018 |

Appeal from the Judgment of Sentence Entered July 12, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002821-2017

BEFORE:  PANELLA, P.J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:  **FILED OCTOBER 21, 2020**

Anthony Hamilton (Appellant) appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, after his jury conviction of intimidation of a witness.[1]  On appeal, Appellant challenges the sufficiency of the evidence, the trial court's supplemental jury instruction, and the discretionary aspects of his sentence.  For the reasons below, we affirm.

On February 22, 2017, Appellant was arrested at the Criminal Justice Center in Philadelphia, and charged with intimidation of a witness and criminal conspiracy.[2]  The case proceeded to a jury trial commencing on December 5,

---

[1] 18 Pa.C.S. § 4952(a)(2).

[2] 18 Pa.C.S. § 903.

2017.  The evidence presented during trial was aptly summarized by the trial

court as follows:

> Complainant, Leona Morrison, testified that she came to the Criminal Justice Center in Philadelphia on February 22, 2017 to testify as a Commonwealth witness at the preliminary hearing of [A]ppellant's friend, Karl Howard.  Howard had been charged with murder in the shooting death of another man inside Kelli's Bar on September [4], 2016.  [Morrison], who was working as a bartender that night at the bar, had witnessed the shooting and had given the police a statement.  She also had identified the shooter from a police photo array.  She was subpoenaed to testify on February 22, 2017 at Howard's preliminary hearing in Courtroom 306.

> [Morrison] testified that when she arrived at the courthouse [that morning] she took the elevator to the third floor.  As she exited the elevator to go to the courtroom, she observed two men standing outside the elevator together, one of whom she recognized as [A]ppellant.  She had seen [A]ppellant a "couple" times at Kelli's Bar and had seen him there a few weeks before the shooting with Howard.  As she passed the two men, "one of them started hissing" at her and one of them called her a "rat" and "snake."  [Morrison] continued walking past the men and upon entering the courtroom she alerted detectives about what had just occurred.  The detectives accompanied [her] back to the elevator bank area where she identified [A]ppellant as one of the two men who had hissed and called her a rat and snake.  The detectives then arrested [A]ppellant, who was subsequently charged . . . with intimidation of a witness and conspiracy to intimidate a witness.  The individual who was with [A]ppellant was later identified as Keddrick Dix.

> The Commonwealth then played for the jury a video recording of the incident and asked [Morrison] to identify and describe what was occurring on the screen.  [Morrison] again testified that one of the men hissed and that the other said the words "snake" and "rat."  [Morrison] was unable to remember whether [A]ppellant was the one who hissed or said the words snake and rat.  When asked what she took the hissing and the words snake and rat to mean she responded "That I am a rat that I am telling on him, on someone."

- 2 -

[Morrison] testified further that after being hissed at and called a rat and a snake, she felt "more scared" and that it made her consider not testifying at the Howard murder trial although she did so because she "thought it was right." She stated that she did not want to testify at [A]ppellant's trial because she was "fearful." When asked what effect [A]ppellant's actions had on her she testified as follows:

"It is a nightmare. I have had nightmares since I got the phone call saying that I had to come back and do this all again. It has been a nightmare, I do not want to go to work no more."

On cross-examination [Morrison] stated that after she heard [Appellant and Dix] say the words "rat" and "snake" she turned and looked at them in the face. [Morrison] acknowledged that when she testified on March 28, 2017[,] before the Indicting Grand Jury she stated that she was looking at [A]ppellant when he said the words "rat" and "snake" and then heard the other man hissing at her.

The Commonwealth next called Detective John Bartol who testified as follows. He was assisting his partner, Detective Whalen, in the September [4], 2016 murder investigation at Kelli's Bar and [Morrison], who was a witness in that case, had given him a statement and had made an identification. Both [ ] Morrison and he were subpoenaed to court on February 22, 2017 to testify at the preliminary hearing of . . . Howard. The Commonwealth then played for the jury a video recording of the 3rd floor elevator area on the morning of the incident beginning at 8:45 a.m. and continuing to 9:24 a.m. Detective Bartol identified both [A]ppellant and [ ] Dix as standing outside the elevators during this entire period with [A]ppellant intermittently holding his cell phone to his ear. He further identified [Morrison] exiting the elevator and then at 9:24 a.m. walking past the elevator bank turning right towards Courtroom 306 where Howard's preliminary hearing was scheduled to take place.

Detective Bartol stated that he was already in Courtroom 306 when [Morrison] entered the courtroom that day and informed him and Detective Whalen about what had occurred when she was exiting the elevators. He described her demeanor at that time as "excited" and "upset." She stated to them that "It was starting already. I came off the elevator and they are out there. I was called a rat and a snake and they were hissing at me." Detective

- 3 -

Bartol testified that he and Detective Whalen, together with several uniformed police officers, escorted [Morrison] from the courtroom and into the hallway to the elevator area where [A]ppellant and [ ] Dix were still located at 9:27 a.m. [Morrison] then positively identified both men as those who had hissed at her and called her a rat and a snake. Detective Bartol then testified that he had seen [A]ppellant earlier that morning when Detective Bartol had exited the same elevator shortly before 9:00 a.m. and witnessed [A]ppellant, who was standing outside the elevator, look at a woman and [say] "Good morning, ma'am." Detective Bartol testified that it was his belief that [A]ppellant was standing there making eye contact to see "exactly every person that was walking by."

The Commonwealth next called Detective Patrick Whalen who testified as follows. He was the assigned detective to a homicide that happened at Kelli's bar on September 4, 2016[ and] was subpoenaed to testify . . . at the preliminary hearing of defendant Howard. When Detective Whalen exited the elevator on the 3rd floor that morning, [A]ppellant was standing outside the elevator and said "Good morning" to him. Detective Whalen stated that he was in the anteroom of Courtroom 306 when [Morrison] entered . . . "visibly shaken" and informed him and Detective Bartol that as she was exiting the elevators she was called a rat and a snake by two people and that one of them was hissing at her. [Morrison] agreed to be interviewed about what happened[,] gave Detective Whalen a statement and later testified before the Indicting Grand Jury.

The Commonwealth then introduced into evidence by way of a stipulation the prison visitor logs for defendant Howard from Curran-Fromhold Correctional Facility which showed that [A]ppellant visited Howard in person for a half an hour on February 16, 2017. The Commonwealth then rested.

Appellant only presented the testimony of Ms. Tajanee Glover who . . . is [A]ppellant's fiancée[,] has known [A]ppellant for over five (5) years and knows Karl Howard through [A]ppellant. She testified that [A]ppellant and Karl Howard have known each other "a long time." On February 22, 2017, she and [A]ppellant dropped her daughter off at school and then came to the Criminal Justice Center at 8:30 a.m. to attend defendant Howard's preliminary hearing. She was not aware of what charges Howard was facing, or even where the murder took place. She denied knowing any "witness" that may be testifying against Howard. She testified

that she went directly into the courtroom but that [A]ppellant waited out in the hallway for the rest of Howard's family to arrive, including Howard's "girlfriend or baby mom and . . . sister." [ ] Glover then identified a still picture taken that morning at 9:31 a.m. of Howard's girlfriend and sister at the courthouse.

On cross-examination, [ ] Glover acknowledged that she had not attempted to contact anyone in the Defender Association or the Philadelphia Police Detective Division to tell them what she testified to in court today. On redirect, she agreed that when she first met [A]ppellant's current counsel from the Defender's Association she told her that she was at the courthouse the day [A]ppellant was arrested for witness intimidation and identified herself on the video.

Trial Ct. Op., 10/30/19, at 4-8 (record citations omitted).

At the conclusion of trial, the jury found Appellant guilty of intimidation of a witness, but not guilty of conspiracy. Appellant filed a pre-sentence motion for extraordinary relief seeking a judgment of acquittal or new trial. The court denied the motion on July 12, 2018. That same day, the trial court sentenced Appellant to a term of 7½ to 20 years' imprisonment, a sentence within the standard guidelines range. Appellant filed a timely post-sentence motion, which the court denied on September 28, 2018. This timely appeal follows.[3]

Appellant raises the following four issues on appeal:

---

[3] On November 16, 2018, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied with the court's directive and filed a concise statement on November 26, 2018, which was docketed the following day. In addition, Appellant sought an extension of time to file a supplemental statement once the notes of testimony were transcribed. The court granted the petition, and Appellant filed a supplemental Rule 1925(b) statement on January 15, 2019.

1. Was not the evidence insufficient to establish [A]ppellant's guilt for intimidation, in violation of [A]ppellant's federal and state constitutional rights, where the Commonwealth failed to prove beyond a reasonable doubt that [A]ppellant uttered the words "rat, snake"?

2. Was not the evidence insufficient as a matter of law to establish the elements of intimidation beyond a reasonable doubt, in violation of [A]ppellant's federal and state constitutional rights, where the acts of uttering the words "rat, snake" or hissing do not, in and of themselves, satisfy the requisite intent necessary to constitute an act of intimidation under 18 Pa.C.S. § 4952?

3. Did not the trial court err as a matter of law by giving the jury an erroneous supplemental instruction in response to the jury's question regarding the intimidation charge by expanding the *actus reus* for which [A]ppellant had been tried?

4. Did not the court err as a matter of law and violate the discretionary aspects of sentencing when it imposed a manifestly excessive and unreasonable sentence of 7½ to 20 years of incarceration, the maximum sentence allowable by law, the basis for which lacked sufficient support in the record and was based on impermissible factors; and the court failed to give individualized consideration to [A]ppellant's personal history, rehabilitative needs and background, and was in excess of what was necessary to address the gravity of the offense, the protection of the community and [A]ppellant's rehabilitative needs?

Appellant's Brief at 4-5.

In his first two issues, which we address together, Appellant challenges the sufficiency of the evidence supporting his conviction. First, he argues the Commonwealth failed to prove beyond a reasonable doubt that he uttered the words "rat" and "snake" to Morrison as she exited the elevator. Appellant's Brief at 22. Alternatively, Appellant maintains the mere act of uttering the words "rat" and "snake" or hissing is insufficient to establish his intent to intimidate Morrison. **See id.** at 25.

- 6 -

Our review of a challenge to the sufficiency of the evidence is well-established:

> The standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom is sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element beyond a reasonable doubt by means of wholly circumstantial evidence.
>
> The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record. Therefore, we will not disturb the verdict unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Von Evans*, 163 A.3d 980, 983 (Pa. Super. 2017) (citation omitted). Further, we emphasize the "fact finder is free to believe all, part, or none of the evidence." *Commonwealth v. Sexton*, 222 A.3d 405, 416 (Pa. Super. 2019) (citation omitted).

In order to secure a conviction for intimidation of a witness, the Commonwealth must prove beyond a reasonable doubt that the defendant

> with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, . . . intimidates or attempts to intimidate any witness or victim to: . . .
>
> (2) Give any false or misleading information or testimony relating to the commission of any crime to any law enforcement officer, prosecuting official or judge.

18 Pa.C.S. § 4952(a)(2). As our Supreme Court has explained:

- 7 -

[I]ntimidation may be accomplished with no words at all, for a mere look or posture can bully, threaten, coerce, frighten, or intimidate beyond question. [Moreover,] people may purposely intimidate in any number of ways, without manifesting bullying or fearsome words, and if they do so with the requisite *mens rea*, the crime is made out.

***Commonwealth v. Doughty***, 126 A.3d 951, 957 (Pa. 2015) (citation omitted).

Appellant first argues the evidence was insufficient to support his conviction because, during trial, Morrison could not identify which man — Appellant or Dix — called her a rat and a snake, and which man hissed at her. Appellant's Brief at 22, *citing* N.T., 12/6/17, at 35. Appellant insists that the Commonwealth proceeded on the theory that **Appellant** said the words rat and snake, and, specified so in its opening statement. *Id.* at 23-24. Since accomplice liability was not charged, Appellant maintains he "could, in fact, only be guilty for the specific *actus reus* for which he was tried." *Id.* at 24. Thus, "because he cannot be held responsible for acts committed by [ ] Dix in the absence of an accomplice liability charge," Appellant contends his conviction must be reversed. *Id.* at 25.

No relief is warranted. First, we note that while Morrison was unable to specify **at trial** which man spoke the words to her and which man hissed,[4] she identified **Appellant** as the person who spoke the words during the indicting grand jury proceedings. N.T., 12/6/17, at 44. This testimony was read during Appellant's cross-examination of Morrison, when defense counsel

_____

[4] Morrison unequivocally testified at trial that "[o]ne hissed and one said, 'Snake and rat.'" N.T., 12/6/17, at 35.

- 8 -

was attempting to discredit her. At trial, Morrison testified that she "turned and looked at" Appellant and Dix after she heard one of them call her a rat and a snake. *Id.* at 43. Upon cross-examination, defense counsel questioned Morrison about her grand jury testimony:

> [Appellant's Counsel:] Do you remember testifying . . . "I looked at the light-skinned boy [Appellant] in the face **as he was saying it**. I just about to pass them."
>
> Do you remember testifying to that?
>
> [Morrison:] Yes.
>
> [Appellant's Counsel:] Once he says it, and you are looking at him as he says it, you also noticed that the other person that you do not recognize is hissing, right?
>
> [Morrison:] Yes.

*Id.* at 44 (emphasis supplied). Thus, the jury was free to credit Morrison's testimony during the grand jury proceedings, which was closer in time to the event, when she identified Appellant as the speaker. Moreover, we emphasize Morrison's prior testimony was introduced by **Appellant's counsel**, and neither party challenged its admission. *See Commonwealth v. Gray*, 867 A.2d 560, 567 (Pa. Super. 2005) (explaining that "[i]n evaluating the sufficiency of the evidence, we do not review a diminished record [and] the law is clear that we are required to consider all evidence that was actually received, without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings are correct.") (citation omitted).

Nevertheless, as we will discuss *infra*, Appellant's conviction may be affirmed if all he did was simply hiss at Morrison. Appellant's *actus reus* claim

is specious. Relying on cases in which the Commonwealth belatedly requested to amend an information or delinquency petition,[5] Appellant asserts he may be convicted **only** for the specific act "for which he was tried," that is for saying the words rat and snake, and not for hissing.[6] **See** Appellant's Brief at 24. However, what Appellant fails to recognize is that he was convicted of the act for which he was charged — intimidating a witness. Neither Appellant's grand jury indictment, nor his criminal information, specified how or by what means Appellant intimidated Morrison. **See** Appellant's Indictment, 3/20/17, at Count 1; Appellant's Information, 4/12/17, at Count 3. As the Commonwealth notes in its brief, Appellant "cites no caselaw indicating the Commonwealth must establish the precise version of events as alleged in its opening." Commonwealth's Brief at 12. Accordingly, this argument fails.[7]

Appellant also argues the evidence was insufficient to support his conviction because "the mere acts of uttering 'rat, snake' or making a hissing

---

[5] **See** Appellant's Brief at 24-25, *citing* **Commonwealth v. DeSumma**, 559 A.2d 521 (Pa. 1989); **In Interest of Becker**, 536 A.2d 1370 (Pa. Super. 1988).

[6] Appellant bases this assertion on the fact that in its opening and closing arguments, the Commonwealth stated that Appellant was the person who called Morrison a rat and a snake. **See** Appellant's Brief at 9-10, *citing* N.T., 12/6/17, at 21; N.T., 12/7/17, at 25, 37, 39.

[7] Appellant's focus on the lack of an accomplice liability charge is similarly misplaced. **See** Appellant's Brief at 24; Appellant's Reply Brief at 3. As we will discuss **infra**, Appellant's conviction is rooted in his own actions – either by calling Morrison a rat and a snake, or hissing at her as she walked by.

sound, in the absence of any other actions or conduct, are insufficient to [establish] the requisite intent to intimidate under 18 Pa.C.S. § 4952." Appellant's Brief at 25. He asserts "[w]ords or acts that are not alone inherently intimidating require proof of additional conduct from which the intent to intimidate may be inferred." *Id.* at 27.

Appellant insists the "totality of the circumstances" present in his case do not support the guilty verdict. Appellant's Brief at 29. He notes: the incident lasted a few "brief seconds;" the video of the encounter did not show "any type of reaction" by any of the persons involved; and there was no evidence of prior or subsequent contact between Appellant and Morrison. *Id.* Rather, Appellant contends the facts of his case are similar to those in *Von Evans*, in which this Court held that a "single pecuniary offer to a victim 'without more,' is insufficient to establish a defendant intended to 'intimidate' a witness." *Von Evans*, 163 A.3d at 28.

Moreover, Appellant maintains that what occurred in the present case was "name-calling and nothing more." Appellant's Brief at 34. He explains:

> While the acts alleged here could be used to provoke a reaction or a feeling from a person, they are not, on their own, sufficient to indicate an intent to intimidate one into altering their behavior or testimony. It cannot be the law that every time someone calls someone a bad name, it would be sufficient to evidence a threat conclusive of an intent to intimidate.

*Id.* at 35. Further, while insisting he is not raising a First Amendment challenge, Appellant cites First Amendment case law as "instructive" in determining whether his actions — either calling Morrison a rat and a snake

- 11 -

or hissing at her — constituted a "true threat" under the First Amendment. *See id.* 36-41.

Viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, we conclude the evidence was sufficient to support the jury's verdict. *See Von Evans*, 163 A.3d at 983. As noted above, in order to convict Appellant of witness intimidation, the Commonwealth was required to prove that Appellant, with the intent to impede the administration of justice, attempted to intimidate a witness (Morrison) into giving false or misleading testimony. *See* 42 Pa.C.S. § 4952(a)(2).

Here, the evidence established that Appellant had known Howard for "[a] long time," that Morrison had seen Appellant and Howard together in the bar a few weeks before the shooting, and that Appellant visited Howard in prison on February 16, 2017, less than a week before Howard's preliminary hearing. *See* N.T., 12/6/17, at 32, 76-77, 79. Detective Bartol testified that on the morning of Howard's preliminary hearing — February 22, 2017 — he arrived at the courtroom at 8:45 a.m., and observed Appellant standing in the hallway. *Id.* at 53. The detective testified that he noticed Appellant look at each person as they walked by, and it was his "belief that [Appellant] was standing there looking and making eye contact to see exactly every person that was walking by." *Id.* at 61. The surveillance video from the hallway confirmed that Appellant and Dix were standing by the elevator from 8:59 a.m. until Morrison arrived at 9:24 a.m. *See id.* at 53-57.

Morrison testified that as she exited the elevator and walked past Appellant and Dix, one of them called her a rat and a snake and the other man hissed. N.T., 12/6/17, at 31. At the grand jury proceeding, Morrison positively identified Appellant as the speaker. *Id.* at 44. Morrison proceeded to the courtroom, where she immediately notified Detectives Bartol and Whalen what had occurred. *Id.* at 35. Detective Bartol testified that Morrison told him, "It is starting already. I just came off the elevator and they are out there. I was just called a rat and snake and they were hissing at me." *Id.* at 58. Detective Whalen described Morrison's demeanor as "visibly shaken." *Id.* at 70-71. Morrison testified the incident made her feel "more scared" and she considered not testifying against Howard, although she ultimately decided to do so because "it was right." *Id.* at 38. She further explained that she now has nightmares as a result of the incident. *Id.* at 39.

Although Appellant emphasizes he did not overtly threaten Morrison or follow her into the courtroom, we conclude that the totality of the circumstances supports the jury's determination that Appellant either called Morrison a rat and a snake or hissed at her with the intent to intimidate her so that she would decline to identify his longtime friend as a murderer. Contrary to Appellant's characterization, he did not simply engage in name-calling in an effort to provoke a reaction. *See* Appellant's Brief at 35. Appellant and his cohort waited outside the courtroom on the morning of Howard's preliminary hearing until Morrison arrived. Then, as Morrison made her way to the courtroom, where she intended to testify against Appellant's

friend, Appellant and Dix called her a rat and a snake and hissed at her. If a stranger on the street called Morrison a rat or hissed at her, we would agree that such behavior likely constituted simple name-calling. However, in the present case, context is key. The incident took place in the courthouse, minutes before Morrison was scheduled to testify against Appellant's friend Howard, who was charged with murder. The surveillance video showed Appellant and Dix waiting by the elevator for half an hour, and Detective Bartol testified he noticed Appellant look at each person as they walked by. Although Appellant's fiancée testified that he was waiting for Howard's family, the jury was free to disregard that testimony. **See Sexton**, 222 A.3d at 416.

Furthermore, we do not agree that this Court's decision in **Von Evans** compels a different result. In that case, the appellant was incarcerated and awaiting trial in a rape case, when he asked his girlfriend to contact the victim and "offer to pay her not to testify." **Von Evans**, 163 A.3d at 981-82. Although the appellant's girlfriend was unable to contact the victim, the appellant was subsequently charged with, *inter alia*, criminal solicitation to intimidate a witness. **Id.** at 982. At his rape trial, the appellant admitted to the above facts, but testified his intention was "not to hurt anyone," but rather "give her the money, [so that] all of this could go away." **Id.** at 982-83.

The appellant was later convicted of solicitation to intimidate a witness. On appeal, this Court vacated the sentence, concluding the evidence demonstrated the appellant "merely intended to 'induce' the victim not to testify," rather than intimidate her. **Von Evans**, 163 A.3d at 981. Relying on

the Pennsylvania Supreme Court's decision in **Doughty**, the **Von Evans** Court observed:

> [T]he fact-finder cannot infer "intimidation" from the mere offer of a pecuniary benefit not to testify. Rather, there must be other evidence from which the fact-finder can infer intimidation, such as a prior relationship between the defendant and victim or the manner in which the defendant made the pecuniary offer not to testify[.]

**Id.** at 984, *citing* **Doughty**, 126 A.3d at 957. The Court noted that in

**Doughty**, the jury was able to infer the appellant's intent to intimidate based

upon prior contact between the appellant and the victim (his wife),

particularly, his history of threatening her, and the "strong invective" he

expressed when he made the pecuniary offer. **Id.** at 984-85. However, the

**Von Evans** Court found no such other circumstances in the case before it:

> Although we are horrified by the brutality of [the a]ppellant's actions in the underlying [rape], . . . in this case there was no evidence of a history of violent interactions between the [a]ppellant and the victim and no invective conversation making the pecuniary offer to the victim. Rather, the Commonwealth's only evidence was a conversation between the [a]ppellant and a third party to make a pecuniary offer. We conclude that this, without more, is evidence merely of an intention to "induce," and not to "intimidate" a witness from not testifying.

**Id.** at 985.

The facts in the present case are distinguishable. First, Appellant did

not simply make a pecuniary offer to Morrison in an attempt to induce her not

to testify. Rather, he and a cohort waited for her arrival at Howard's

preliminary hearing. When she stepped off the elevator, he and his cohort

immediately called her a rat and a snake and hissed at her. Morrison knew

Appellant was, at the very least, an acquaintance of Howard. Thus, the evidence demonstrated that she interpreted the incident as it was intended – an attempt to "intimidate" her not to testify at Howard's preliminary hearing.

The **Doughty** Court made clear that "people may purposely intimidate in any number of ways, without manifesting bullying or fearsome words, and if they do with the requisite *mens rea*, the crime is made out." **Doughty**, 126 A.3d at 957. Indeed, "intimidation may be accomplished with no words at all, for a mere look or posture can bully, threaten, coerce, frighten or intimidate[.]" **Id.** Here, the totality of the circumstances surrounding the incident — which occurred in the courthouse immediately before Morrison was scheduled to identify his friend as a murderer — provided a sufficient basis for the jury to conclude Appellant intended to intimidate Morrison not to testify when he and Dix called her a rat and a snake and hissed at her.

Appellant's reliance on First Amendment law is similarly misplaced. Indeed, he concedes he "does not raise a claim under the First Amendment." Appellant's Brief at 36. Nevertheless, Appellant insists that states are only permitted to "ban a "true threat" under the First Amendment." **Id.**, *citing* **Watts v. United States**, 394 U.S. 705 (1969) (government may criminalize true threats against the president, but not simply political hyperbole). He further argues "because 'rat, snake' and hissing are words indicating a personal opinion or expression, uttering 'rat, snake' or hissing is not always a 'true threat' indicating an intent to intimidate[.]" Appellant's Brief at 37.

Accordingly, he insists "it is not prima facie evidence of intent to intimidate."

*Id.*

Preliminarily, we note any First Amendment argument is waived because Appellant did not raise such a claim in the trial court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Nevertheless, Appellant fails to acknowledge that his prosecution involved more than mere name-calling. As discussed above, the totality of the circumstances surrounding the incident provided the jury with a sufficient basis to conclude Appellant intended to intimidate Morrison. Accordingly, Appellant's first two claims warrant no relief.

In his third issue, Appellant challenges the trial court's supplemental jury instruction, which was provided in response to a jury question. Appellant's Brief at 42. It is well-settled that "[w]e review jury charges, including supplemental jury charges, for an abuse of discretion." *Commonwealth v. Greer*, 951 A.2d 346, 354 (Pa. 2008) (citation omitted). Moreover,

> when evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, "[i]t is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." "Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error."

*Commonwealth v. Kerrigan*, 920 A.2d 190, 198 (Pa. Super. 2007) (citations omitted).

- 17 -

By way of background, we note the trial court initially instructed the jury that in order to find Appellant guilty of intimidation of a witness, it must find, first, "that [Appellant] intimidated or attempted to intimidate Leona Morrison **by calling her a rat and a snake**." N.T., 12/7/17, at 53 (emphasis added). During their deliberations, the jury asked the court, "[F]or the intimidation charge, to find guilty, do we need to find that [Appellant] said rat or snake or is it enough to find he hissed?" *Id.* at 61. During the ensuing discussion with counsel, the trial court stated that its answer to the question would be "yes, because . . . that is conspiracy[.]" *Id.* at 62. Appellant's counsel urged the court to simply "reread the charge and not give an opinion one way or the other to this question." *Id.* Conversely, the prosecutor argued that the court should answer "yes," because "the conspiracy covers actions by either of them." *Id.* After further discussion, the following exchange occurred:

> [THE COURT]: I don't have an issue with clarifying it. That's what the allegations are is that somebody said rat and snake and somebody hissed. So, they would have to find that both things happened to find [Appellant] guilty of intimidation and conspiracy, not that he would have had to have done both things.
>
> [Commonwealth]: That is the spirit of the whole trial, that's okay with me.
>
> THE COURT: Let me clarify it that way and explain it that way, is that all right?
>
> [Appellant's counsel]: That is fine.

*Id.* at 66.

When the jury returned to the courtroom the trial court gave the following supplemental charge:

As to [your] question to the intimidation charge, to find guilt, do you need to find that [Appellant] said rat or snake or is it enough to find he hissed?

You need to find that [Appellant] or the codefendant, Keddrick Dix, needed to say rat or snake and [Appellant] or Keddrick Dix hissed. So, one can do one and one can do the other. You need to find that, and you need to find that [Appellant] was one of those two people. I hope that answers your question.

N.T., 12/7/17, at 71-72. Appellant's counsel raised no objection. Thereafter, the jury found Appellant guilty of intimidation of a witness, and not guilty of conspiracy. *See id.* at 77-80.

On appeal, Appellant argues the supplemental charge "was erroneous as it expanded the *actus reus* for which [Appellant] could be found guilty beyond that for which he had been tried." Appellant's Brief at 43. Rather than clarifying the instruction for the jury, as the trial court indicated it would, Appellant insists the court's supplemental charge "changed the conduct for which [Appellant] has been tried and completely altered the original jury instruction." *Id.* at 48. Moreover, Appellant maintains the prejudice is "apparent" because, based upon the original instruction, the jury could not find him guilty if it did not believe he called Morrison a rat and a snake, but under the supplemental instruction, it could if it believed he was the person who hissed. *Id.* at 50.

The Commonwealth contends, however, that this issue is waived. Commonwealth's Brief at 13-14. We agree. Pennsylvania Rule of Criminal Procedure 647 mandates, in pertinent part:

(C) No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto

- 19 -

before the jury retires to deliberate. All such objections shall be made beyond the hearing of the jury.

Pa.R.Crim.P. 647(C). **See also** Pa.R.A.P. 302(b) ("A general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of.").

The Pennsylvania Supreme Court's decision in **Commonwealth v. Edmondson**, 718 A.2d 751 (Pa. 1998), is dispositive. In that case, during deliberations, the jury asked the trial court what would happen if it could not reach a verdict on one of the crimes charged. **Id.** at 752. The trial court provided a supplemental instruction, which a panel of this Court found to be "coercive" on direct appeal. **Id.** Accordingly, the panel reversed and remanded the case for a new trial. **Id.** The Pennsylvania Supreme Court, however, concluded the claim was waived because defense counsel failed to object to the supplemental instruction when it was given. **Id.** The Court opined:

> Requiring a timely, specific objection to be lodged in the trial court ensures that the trial judge has a chance to correct alleged trial errors and eliminates the possibility that the appellate court will be required to expend time and energy reviewing points on which no trial ruling has been made.
>
> Here, even though the jury instruction in question may have been coercive, as determined by the Superior Court, [the defendant] failed to object to the trial court's supplemental instruction when it was given. This failure deprived the court of the opportunity to give a curative instruction if it felt that one was appropriate. Pennsylvania Rule of Criminal Procedure 1119[8]

---

[8] Rule 1119 was renumbered as Rule 647 in March of 2000. **See** Pa.R.Crim.P. 647 ("Credits").

clearly requires that a timely objection be lodged in order to preserve error in the original instructions. The fact that [the defendant] raised this issue in post-trial motions and in his statement of matters complained of on appeal and the trial court addressed the issue does not change the result.

*Id.* at 753 (citations and footnoted omitted).

*Edmondson* compels the same result here. When Appellant failed to object after the trial court issued its supplemental instruction, he waived any challenge to that instruction on appeal. Thus, no relief is warranted.

In his final claim, Appellant challenges the discretionary aspects of his sentence. It is well-established that such a challenge does not entitle an appellant to "review as of right." *Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa. Super. 2015) (*en banc*) (citation omitted). Rather,

[b]efore this Court can address such a discretionary challenge, an appellant must comply with the following requirements:

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Id.*

In the present case, Appellant filed a timely notice of appeal, and preserved his claim in a timely-filed post-sentence motion. *See* Appellant's Post Sentence Motions and Motion to Reconsider Sentence, 7/14/18, at 9-10 (unpaginated). In addition, he has included in his brief the requisite concise

statement of reasons relied upon for appeal pursuant to Pa.R.A.P. 2119(f). *See* Appellant's Brief at 17-20. Accordingly, we must now consider whether Appellant's claim raises a substantial question.

An appellant "presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." *Commonwealth v. Conte*, 198 A.3d 1169, 1174 (Pa. Super. 2018) (citation omitted), *appeal denied*, 206 A.3d 1029 (Pa. 2019).

> In determining whether a substantial question exists, "[o]ur inquiry must focus on the reasons for which the appeal is sought in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." Additionally, we cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists.

*Commonwealth v. Provenzano*, 50 A.3d 148, 154 (Pa. Super. 2012) (citations omitted).

In the present case, Appellant argues the sentence imposed by the trial court was manifestly excessive and unreasonable. Appellant's Brief at 17. He contends the trial court focuses solely on the seriousness of his crime, while failing to consider the remaining factors listed in Section 9721 of the Sentencing Code. *Id.* at 18. *See* 42 Pa.C.S. § 9721(b) ("The court shall follow the general principle that the sentence imposed should call for total confinement that is consistent with . . . the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant."). Appellant also

maintains that the trial court imposed the maximum sentence allowable by relying on "inappropriate" factors, namely, "a litany of uncharged conduct and unadjudicated arrests, including disciplinary reports from school and prison, as well as inadmissible hearsay statements from the complainant dating back to before trial." Appellant's Brief at 19. Allegations that the trial court failed to consider the relevant factors set forth in Section 9721(b), and imposed a "manifestly excessive and unreasonable sentence," both raise a substantial question for our review. *See Commonwealth v. Roane*, 204 A.3d 998, 1002 (Pa. Super. 2019). Moreover, a claim that "the sentencing court relied on 'impermissible factors'" also raises a substantial question. *Commonwealth v. Shugars*, 895 A.2d 1270, 1274 (Pa. Super. 2006). Thus, we may proceed to a review of Appellant's claims.[9]

> Preliminarily, we note:
>
> Sentencing is the responsibility of the trial court and we will not disturb the sentence unless there is a manifest abuse of discretion. To establish a manifest abuse of discretion, the appellant must

---

[9] We note the Commonwealth insists Appellant's sentencing claims are waived because his Rule 1925(b) statement was not "specific enough to permit meaningful review." Commonwealth's Brief at 16. Indeed, in both his original and supplemental statements, Appellant asserted the court's sentence was "based on inappropriate reasons." *See* Appellant's Statement of Errors Complained of on Appeal, 11/26/18, at 3 (unpaginated); Appellant's Supplemental Statement of Errors Complained of on Appeal, 1/15/19, at 3 (unpaginated). While we agree Appellant should have been more explicit, we decline to find waiver here as his post-sentence motion specified the trial court relied upon prior bad conduct and hearsay statements in imposing his sentence. *See* Appellant's Post-Sentence Motions and Motion to Reconsider Sentence at 9.

show a misapplication of the law, or partiality, prejudice, bias, or ill will that led to the unreasonable decision.

***Commonwealth v. Knox***, 219 A.3d 186, 199 (Pa. Super. 2019) (citations omitted). Before imposing sentence, a trial court must consider the relevant sentencing guideline ranges, as well as "the factors set out in 42 Pa.C.S. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant."

***Commonwealth v. Coulverson***, 34 A.3d 135, 144 (Pa. Super. 2011) (citation omitted). When the sentence falls within the standard range of the guidelines, an appellate court is authorized to vacate the sentence only if "the case involves circumstances where the application of the guidelines would be clearly unreasonable[.]" 42 Pa.C.S. § 9781(c)(2). Section 9781 further provides that when reviewing the record, an appellate court should consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d)(1)-(4).

Here, the trial court acknowledged that the sentencing guidelines called for a standard range minimum sentence of 72 to 90 months' imprisonment based upon Appellant's prior record score of five and the offense gravity score of 11. N.T., 7/12/18, at 51, 107. ***See*** 204 Pa.Code 303.16(a). Thus, the minimum sentence imposed — 7½ years' imprisonment — fell within the upper

end of the standard range. The trial court made the following comments before imposing sentence:

> I have considered all the evidence in this case; trial evidence, presentence, mental health, the prior record score reports, all of the testimony presented at the sentencing hearing today, all of the reports that have been previously submitted by both counsel as well as . . . what [Appellant] has to say and the sentencing guidelines, the sentencing code, and the factors I'm supposed to consider which are the need for the protection of the public, the gravity of the offense, and rehabilitative needs of [Appellant.]
>
> *    *    *
>
> Your case had to go to what we call an indicting grand jury[, which was] created because of the rampant witness intimidation in Philadelphia and other places. . . .
>
> *    *    *
>
> [W]hen people try to intimidate witnesses, you're putting a knife through the heart of the criminal justice system; the [C]rimes [C]ode, all the [R]ules of [C]riminal [P]rocedure that they cited, all the case law today, it means nothing. My robe might as well be ripped up and thrown away. Because if witnesses are fearful about coming in to testify, we have no criminal justice system.
>
> *    *    *
>
> We don't just convict people on police reports or summaries or the DA's allegations. And so when people start intimidating witnesses it's like destroying our system. This building becomes irrelevant because of what's going on in the streets, but when it actually happens in the building as somebody gets off an elevator to go to testify in a preliminary hearing and the irony of all of this is that Mr. Howard was found not guilty, despite the witnesses['] testimony at trial.
>
> *    *    *
>
> [Y]ou know, there are threats and then there are the context of when threats are made. It's one thing in anger that somebody yells at somebody over a parking space, but it's another thing when somebody is in the Criminal Justice Center outside of an elevator on the floor of the preliminary hearing who was involved

[in] what you were convicted of. And I didn't convict you, the jury did. The jury heard all the evidence.

I can't rewind the tape of what happened to you when you were growing up and I'm not here to dispute that you had a hard childhood. Many people in front of me have hard childhoods. Very few I've ever seen come into this building, and stay outside of a homicide preliminary hearing room and try to intimidate witnesses; usually this goes on on the street, but the boldness in this building of doing it? That's why we have cameras in the hallway. . . . Fortunately, the cameras caught this. That's why they installed them; to stop this behavior which goes right to the heart of what our democracy and our justice system is about.

This is not Iraq or Syria or some other uncivilized country where you get the justice on the street and they kill each other. And that's how justice goes on. The courts are a joke. This is the United States of America. You've been afforded all these protections in all the cases you had, and then you come into this building and do this?

. . . Based on my review of everything that I have stated, the sentence on the intimidation is as follows; seven-and-a half to 20 years[.] . . . [T]he guidelines are what they are because of the kind of damage that these crimes do in society. And what happened here is wrong on so many levels. They didn't ever need to happen, but you decided that day you were going to do what you did. . . .

N.T., 7/12/18, at 100-08.

Furthermore, in its opinion, the trial court elaborated that it found "very little evidence of mitigation" benefiting Appellant. Trial Ct. Op. at 17. Indeed, while the trial court acknowledged it had reviewed a mitigation packet prepared by the defense, as well as the testimony of Raymond Moore, a social worker from the Public Defenders' Office, it found "Appellant's background demonstrated a persistent disturbing pattern of drug use and dealing, aggressive and physical interactions with police and teachers, possession of illegal firearms and now intimidation of a witness in a homicide trial while in

the courthouse." *Id.* at 18. Thus, the court maintained that its sentence of 7½ to 20 years' imprisonment did not constitute an abuse of discretion. *Id.* at 19.

Upon our review of the record, the parties' briefs, and the relevant statutory and case law, we detect no basis to disturb the trial court's standard range sentence. While we agree the trial court emphasized the seriousness of the crime of witness intimidation,[10] we disagree the court did so to the extent that it failed to give proper consideration to the remaining Section 9721(b) factors. As noted above, the trial court was well aware of Appellant's background and rehabilitative needs, through the memoranda prepared before sentencing and the comprehensive testimony of the social worker from the Defender's Office. *See* N.T., 7/12/18, at 59-76. Although Mr. Moore testified that Appellant would benefit from "trauma-informed therapy" and "intensive" outpatient mental health treatment, and that he would remain in "close contact" with Appellant if he was on supervision, he also acknowledged that Appellant had been discharged from a juvenile facility in 2008 for "aggressive and unruly behavior," and he was unaware of "any programs [Appellant had] taken advantage of from his previous incarceration episodes[.]" *Id.* at 64, 67, 73, 75. Therefore, the court's failure to embrace Appellant's call for leniency does not constitute an abuse of discretion. *See Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa. Super. 2009) ("We

---

[10] *See* Appellant's Brief at 55-56.

cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court.").

We also reject Appellant's claim that, in imposing his sentence, the trial court "improperly relied upon unadjudicated arrests and conduct," as well as "inadmissible hearsay in the form of statements made by the complainant to the prosecutor." Appellant's Brief at 56, 58. Specifically, he notes that the Commonwealth "listed every arrest and conviction of [Appellant's] replete with a summary of facts for each[, and] introduced into evidence [his] disciplinary records and referenced a litany of conduct involving teachers at school, for which he was not arrested." Appellant's Brief at 57. Moreover, Appellant emphasizes the trial court also permitted the prosecutor to relay statements the victim made to them regarding her fear of testifying in the underlying case, and the reason she did not appear for sentencing. *See id.* at 58.

First, we remind Appellant:

The conduct of a sentencing hearing differs from the trial of the case. To determine an appropriate penalty, the sentencing court may consider any evidence it deems relevant. While due process applies, the sentencing court is neither bound by the same rules of evidence nor criminal procedure as it is in a criminal trial.

***Commonwealth v. King***, 182 A.3d 449, 455 (Pa. Super. 2018) (citations omitted). Moreover, this Court has approved a sentencing court's consideration of uncharged criminal conduct when imposing sentence, so long as there is an "evidentiary link between the defendant and the uncharged prior conduct." ***Commonwealth v. P.L.S.***, 894 A.2d 120, 131 (Pa. Super. 2006).

Here, the Commonwealth's discussion of Appellant's prior arrests and disciplinary records was in direct response to the following arguments by defense counsel, attempting to minimize both this crime and Appellant's prior record: (1) Appellant did not "physically attack" the victim or "hurt her in any way intimidate the victim, rather, he simply "said something inappropriate[;]" (2) Appellant is "not a violent person[;]" (3) Appellant's two juvenile adjudications for robbery were not "physical;" and (4) Appellant is not a "criminal mastermind, who is escalating and violent and [who] we should be more and more worried about[.]" N.T., 7/12/18, at 53-54, 56, 57. In response, the Commonwealth referred to information in its sentencing memorandum, as well as Appellant's school disciplinary records. **See id.** at 78-80. When Appellant's counsel protested that many of the incidents referred to were over 10 years old, when Appellant was a juvenile, the trial court stated:

> Yes, and you brought up a lot of other things, too, about his juvenile past. I'll take it for whatever weight is appropriate. They're not convictions but it's part of a presentence presentation.

**Id.** at 84.

Furthermore, with regard to hearsay statements by the victim, we note Morrison testified at trial that she has had "nightmares" since the incident and does not "want to go to work[.]" N.T., 12/6/17, at 39. Thus, the prosecutor's statement that she is "extremely upset" and "still wets her bed at night" was nothing more than an exaggerated rehash of testimony the court already heard. **See** N.T., 7/12/18, at 86. Moreover, the trial court did not refer to

this testimony, or Morrison's failure to appear for sentencing, in its statement before imposing sentence or in its opinion. Thus, we reject Appellant's claim that the trial court relied on inappropriate factors in imposing his sentence.

Therefore, because we conclude Appellant is entitled to no relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/21/2020